**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DAMON LYNCH : | |
|     Plaintiff : | |
| : | |
| v. : | Civil No. L-05-2273 |
| : | |
| GRAUL'S MARKET : | |
|     Defendant : | |

**MEMORANDUM**

Damon Lynch has filed a complaint against Graul's Market ("Graul's") under the Americans with Disabilities Act of 1990 (ADA)[1] and Title VII of the Civil Rights Act of 1964.[2] Now pending is Graul's partial motion to dismiss. (Docket No. 4). For the following reasons, the Court will, by separate order, GRANT the Motion in part and DENY the Motion in part.

**I.   Introduction**

Damon Lynch is an African American man who wears his hair in long braids called "cornrows." He also suffers from a skin condition called pseudofolliculitis barbae (PFB), which predominantly affects African American men.[3] PFB is caused when men with curly facial hair shave and the hairs grow back into the skin causing bumps and occasional scaring. The only fully effective cure is to stop shaving.[4]

On September 13, 2004, Lynch applied for a stock clerk position with Graul's, a family

---

    [1]    42 U.S.C. §§ 12101-13.

    [2]    42 U.S.C. § 2000(e).

    [3]    Lynch does not provide statistics regarding the how many men with PFB are African American or how many African American men are afflicted by PFB.

    [4]    See "Pseudofolliculitis Barbae" American Osteopathic College of Dermatology: Dermatological Disease Database, http://www.aocd.org/skin/dermatologic_diseases/pseudofolliculitis.html.

run supermarket. He interviewed on two separate occasions with two different managers. During both interviews, Lynch was told that Graul's does not permit employees who "interact with the public" to wear beards or cornrows. Lynch states that he told the managers about his PFB, but they would not make an exception to the policy. Lynch now brings a failure to hire suit under the ADA and Title VII, and Graul's has filed a partial motion to dismiss.

To qualify as an individual with a disability under the ADA, Lynch must have "a physical or mental impairment that substantially limits one or more of [his] major life activities."[5] Lynch cannot meet this standard. His inability to shave does not keep him from participating in his daily activities, and he is able to hold a wide range of jobs. Accordingly, Lynch cannot state a claim under the ADA.

Lynch is also unable to state a claim that Graul's policy against wearing cornrows has a disparate impact on African Americans. Lynch's hairstyle is not an immutable characteristic and can be changed at will. Moreover, as a food purveyor, Graul's has a legitimate business interest in having clean, well-groomed employees.

The Court does not have enough information, however, to determine whether Lynch has stated a claim that Graul's "no beard" policy has a disparate impact on African Americans. The parties dispute whether Lynch informed Graul's of his PFB and whether Lynch completed the hiring process. Moreover, it is unclear whether Graul's has a medical exception to its policy and whether Lynch would in fact interact with the public as a stock clerk. Accordingly, the parties shall flesh out these issues though discovery.

---

[5] 42 U.S.C. § 12102(2). Alternatively, a person with a disability may be someone who "has a record of such impairment" or "is regarded as having such impairment." Id.

**II.     Background**

Lynch is an African American man who wears his hair in cornrows and suffers from PFB, a skin condition that prevents him from shaving his beard. (Cmplt, ¶ 11). On September 13, 2004, Lynch interviewed for a stock clerk position with Graul's Human Resources Manager, Wendy Stierwalt. (Cmplt, ¶ 12). During the interview, Stierwalt told Lynch that Graul's grooming policy prohibits employees from wearing cornrows and beards. (Cmplt, ¶ 12). Lynch states that at this interview he informed Stierwalt that he has PFB and that he cannot shave his beard. (Cmplt, ¶ 13). At the end of this interview, Steirwalt scheduled Lynch for a second interview. (Cmplt, ¶ 14).

On September 15, 2004, Lynch met with Anthony Webb, a Graul's manager. (Cmplt, ¶ 14). Webb reiterated the grooming policy and stated that it applied to all employees who "interact with the public." (Cmplt, ¶ 14). Lynch explained again that he suffers from PFB. (Cmplt, ¶ 14). In response, Webb said that Graul's grooming policy would not change, but if Lynch shaved his beard and removed his cornrows he would be hired. (Cmplt, ¶ 14). After his interview with Webb, Lynch provided documentation of his PFB to Graul's, but Graul's did not change its policy. (Cmplt, ¶ 15).

On August 18, 2005, Lynch filed a three count complaint against Graul's. In Count I, Lynch alleges that Graul's discriminated against him under the ADA when it refused to hire him because of his beard. In Counts II and III, Lynch alleges that Graul's discriminated against him on account of his race by refusing to hire him because of his beard and cornrows respectively. Lynch also raises disparate impact claims under Counts II and III.

Now pending is Graul's partial motion to dismiss. Graul's argues that Lynch has failed

3

to state a claim for discrimination under the ADA and disparate impact under Title VII.  Graul's does not seek to dismiss Lynch's disparate treatment claims.

**III.    Standard**

Ordinarily, a complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of its claim that entitle it to relief.[6]  The liberal pleading requirements of Rule 8(a) demand only a "short and plain" statement of the claim.  In evaluating such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff.[7]  In essence, the legal theory articulated, or even suggested, by the non-moving party must be one that could not be the basis for a ruling in that party's favor.

**IV.    Analysis**

    A.    <u>ADA Claim</u>

To establish a violation of the ADA in a failure-to-hire case, Lynch must show that (1) he has a disability; (2) he is qualified for the stock-clerk job; and (3) his disability "played a motivating role" in Graul's failure to hire him.[8]   Lynch cannot meet this standard because he fails the first prong of the analysis, namely that PFB is a disability under the ADA.

The ADA defines an individual with a disability as someone who "has a physical or

---

[6]  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995).

[7]  See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969).

[8]  See Martell v. Sparrows Point Scrap Processing, LLC, 214 F. Supp. 2d 527, 528 (D. Md. 2002) (citing Baird v. Rose, 192 F.3d 462, 466, 470 (4th Cir.1999)).

mental impairment that substantially limits one or more of such person's major life activities."[9] The EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[10] These are activities that are "of central importance to most people's daily lives."[11]

Lynch does not state which of his major life activities are impaired by PFB. Nonetheless, it is apparent that he cannot meet this standard. An inability to shave does not substantially limit any major life activities.[12] In particular, PFB does not prevent Lynch from "working" because he is capable of working in a broad range of jobs. "The inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working."[13] Accordingly, Lynch has failed to state a claim under the ADA.[14]

---

[9] 42 U.S.C. § 12102(2). Alternatively, a person with a disability may be someone who "has a record of such impairment" or "is regarded as having such impairment." Id.

[10] 29 C.F.R. § 1630.2(i)

[11] Toyota Moto Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).

[12] The only case that Lynch cites to in support of his argument is a Maryland Court of Special Appeals case which finds that PFB is a "handicap" under the Maryland Code. See University of Maryland at Baltimore v. Boyd, 612 A.2d 305, 317 (Md. App. 1992). The court reasons that PFB impairs the plaintiff's ability to socialize because of "his concern and embarrassment about his face." Id.

Lynch does not allege that PFB hinders his ability to socialize. Moreover, even if Lynch was prevented from engaging in social activities, the Fourth Circuit has "expressed doubt" that "interacting with others" is a major life activity. See Rohan v. Networks Presentations LLC, 375 F.3d 266, 274 (4th Cir. 2004). Accordingly, even if Lynch alleges that PFB substantially limits his ability to socialize, this does not create a claim under the ADA.

[13] 29 C.F.R. § 1630.2(j)(3)(i).

[14] In the only other case to address whether PFB substantially limits a major life activity, the District Court for the Northern District of California held, "Plaintiff has not submitted any evidence that his pfb condition restricts him from performing a class of jobs or a broad range

B.  Disparate Impact Claims

Lynch also alleges that Graul's neutral grooming policy, which prohibits him from wearing a cornrows and a beard, has a disparate impact on African Americans.[15] While Lynch has failed to state a claim with regard to cornrows, his PFB claim will proceed to discovery.

   *1. Cornrows*

Lynch's argument that Graul's cornrow policy has a disparate impact on African Americans fails to state a claim. "Title VII protects classes defined by certain immutable traits identified by statute and possessed by certain individuals. Traits or factors specifically within an individual's control are not necessarily protected."[16] Although cornrows are traditionally worn by African Americans, hairstyle is not an immutable characteristic and can be changed at will.[17] Moreover, Graul's, a food purveyor, has a legitimate interest in ensuring that its employees

---

of jobs in various classes. Accordingly, no reasonable jury could find that plaintiff is disabled within the meaning of the ADA and FEHA." Green v. Safeway Stores, Inc., No. 96-3471, 1998 WL 898366, *5 (N.D. Cal. Dec. 14, 1998).

[15]   Title VII sets forth a burden shifting scheme for disparate impact claims. See 42 U.S.C. § 2000e-2(k)(1)(A). The plaintiff must first make a prima facie showing that the "respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." Id. If the plaintiff makes the prima facie showing, the respondent can then rebut the prima facie case by demonstrating "that the challenged practice is job related for the position in question and consistent with business necessity." Id.

[16]   Batson v. Powell, 912 F. Supp. 565, 572 (D.D.C. 1996).

[17]   See Earwood v. Continental Southeastern Lines, Inc., 539 F.2d 1349, 1351 (4th Cir. 1976) ("Discrimination based on factors of personal preference does not necessarily restrict employment opportunities and this is not forbidden.... Hair length is not an immutable characteristic for it may be changed at will."); Rogers v. American Airlines, Inc., 527 F. Supp. 229, 232 (S.D.N.Y. 1981) ("An all-braided hair style is an 'easily changed characteristic,' and, even if socioculturally associated with a particular race or nationality, is not an impermissible basis for distinctions in the application of employment practices by an employer.").

maintain a cleanly appearance.[18] Accordingly, Lynch has failed to state a disparate impact claim as it pertains to Graul's cornrow policy.

      2.  *PFB*

Lynch's PFB disparate impact claim cannot be dismissed at this stage. Several factual issues exist that must be fleshed out through discovery. These issues include, among others:

(i)  whether Lynch informed Graul's of his PFB condition;

(ii)  whether Lynch completed the hiring process;

(iii)  whether Graul's "no beard" policy contains a medical exception for PFB;[19]

(iv)  whether stock-clerks interact with the public and are subject to the grooming policy; and

(v)  the number of people employed by Graul's with facial hair, their race, and whether they fall under an exception to the grooming policy.

Accordingly, Lynch's disparate treatment claims and his disparate impact claim regarding BFP will proceed to discovery. A scheduling order will accompany this memorandum.

**V.   Conclusion**

For the foregoing reasons, the Court will, by separate order, GRANT Graul's motion in part and DENY Graul's motion in part.

---

[18] See Woods v. Safeway Stores Inc., 420 F. Supp. 35, 43 (E.D. Va. 1976), aff'd 579 F.2d 43 (4th Cir. 1978) ("In the instant case, the business involved is the retail food business, a highly competitive multi-denominational industry. Since the product sold is intended, for the most part to be consumed, overall store hygiene and an appearance of cleanliness is an important aspect of customer preference.").

[19] See Green v. Safeway Stores, Inc., No. 96-3471, 1998 WL 898366, * 6 (N.D. Cal. 1998) (holding that Safeway's "no beard" policy did not have a disparate impact on African Americans because the policy contained an exception for PFB).

Dated the 29th day of June, 2006.

                                                /s/
                                    Benson Everett Legg
                                    Chief Judge