IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Damon LYNCH | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Civil No. L-05-2273 |
| | : | |
| GRAUL'S MARKET | : | |
|     Defendant | : | |

## MEMORANDUM

Now pending are Plaintiff Damon Lynch's Motion to Amend Complaint (Docket No. 25) and Motion for Protective Order (Docket No. 27), and Defendant Graul's Market's ("Graul's") Motion to Compel Discovery (Docket No. 38).[1]  For the following reasons and by separate order the Court GRANTS in PART and DENIES in PART Lynch's Motion to Amend Complaint, DENIES Lynch's Motion for Protective Order, and GRANTS Graul's Motion to Compel.

**I.    Background**

Damon Lynch is an African American man who wears his hair in braids called "cornrows."[2]  He also suffers from a skin condition called pseudofolliculitis barbae (PFB), which predominantly affects African American men.  Not shaving is the only effective treatment for the condition.

On September 13, 2004, Lynch interviewed for a stock clerk position with Graul's Market.  At that time, its grooming policy required all male employees who interacted with customers to be clean-shaven and to keep their hair length above the shirt-collar.  Although

---

[1]    The Court notes that by Docket No. 42 Graul's has withdrawn its Motion to Issue Medical Records Subpoena (Docket No. 21), and that by Docket No. 43 Lynch has withdrawn his Motion to Compel Discovery (Docket No. 26) and Motion to Strike Medical Records Subpoena (Docket No. 23).

[2]    It is unclear how long Lynch's cornrows are.

Graul's invited Lynch back for a second interview, when the store advised him of the policy, he declined the interview and filed suit.

Lynch's complaint alleged violations of the American with Disabilities Act (ADA) and Title VII. On June 29, 2006, the Court dismissed the ADA claim and a disparate impact claim relating to Lynch's hairstyle.[3] Two counts remain. In Count II, Lynch alleges racial discrimination under two theories: (i) disparate treatment, meaning that Graul's used its no-beard policy as a pretext for not hiring him, and (ii) disparate impact, meaning that the policy has a disproportionate effect on African Americans. In Count III, Lynch alleges that Graul's uses its no long hair policy as pretext to mask its true reason (racial discrimination) for not hiring him. The Court doubts whether Lynch's Title VII claim should only be broken down into two counts, but will leave that issue for the summary judgment stage of this case.

**II.    Motions**

    **A.    Lynch's Motion to Amend Complaint:**

        **1.    42 U.S.C. § 1981 Claim:**

Lynch seeks to (i) add a claim under 42 U.S.C. § 1981, (ii) add a retaliation claim under 42 U.S.C. § 2000e-3, and (iii) specify the statutory authority (42 U.S.C. § 1981a) under which he seeks compensatory and punitive damages.[4] The decision to grant a plaintiff leave to amend his complaint under Fed. R. Civ. P. 15(a) rests within the trial court's discretion. HealthSouth

---

[3]    Court's Memorandum and Order on Defendant's Motion to Dismiss (Dockets No. 10 & 11).

[4]    Additionally, Lynch seeks to correct several scrivener's errors made throughout the complaint, to renumber his paragraphing, and to update his mailing address. He also unnecessarily references 42 U.S.C. § 2000e-5, which merely outlines Title VII's enforcement framework.

2

Rehabilitation Hospital v. American Red Cross, 101 F.3d 1005, 1010 (4th Cir.1996). Leave should be freely given absent undue delay, bad faith, or undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962).

Lynch argues that leave is warranted because he has alleged "no new statutory violations." Lynch is incorrect in that respect, because § 1981 is a separate statutory basis for asserting a discrimination claim. Title VII and § 1981 claims are both analyzed under the same McDonnell-Douglas test, but they differ in that compensatory and punitive damages awarded under § 1981 are not subject to Title VII's damage caps, which vary according to the employer's size. See Pavon v. Swift Transp. Co., 192 F.3d 902, 910 n.2 (9th Cir. 1999); Kim v. Nash Finch Co., 123 F.3d 1046, 1062 (8th Cir. 1997). Nevertheless, because both statutory claims are essentially the same, see Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989), and because the amendment would not require re-opening discovery, the Court finds that the amendment will not prejudice Graul's.

Section 1981 may not be used to advance a disparate impact claim. See, e.g., Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Owing to its post-Civil War era roots, § 1981 only reaches purposeful discrimination. General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389 (1982). Accordingly, when Lynch amends his complaint, he should state his § 1981 claim as separate count asserting intentional discrimination. With that qualification, the Court GRANTS Lynch's motion to amend.

    **2. 42 U.S.C. § 2000e-3 Retaliation Claim**:

Lynch also seeks to add a retaliation claim under 42 U.S.C. § 2000e-3. No colorable claim exists in this case. Lynch was never hired, meaning that he was never disciplined (e.g.,

demoted or terminated) for challenging Graul's grooming policy as discriminatory. Accordingly, the Court DENIES Lynch's motion to amend his complaint to allege retaliation.

### 3. 42 U.S.C. § 1981a: Statutory Authority for Damages:

Lynch also seeks leave to "specify" that he seeks compensatory and punitive damages under Title VII's remedial provision, 42 U.S.C. § 1981a. Lynch need not do so, as § 1981a damages are not "special damages" that must be pleaded with particularity. Fed. R. Civ. P. 9(g). Paragraphs "e" and "f" of Lynch's complaint adequately allege that he seeks compensatory and punitive damages, which the Court construes as an invocation of 42 U.S.C. § 1981a. Accordingly, Lynch's motion to amend is DENIED.

### B.     Lynch's Motion for Protective Order:

Lynch seeks to (i) redepose Wendy Stirewalt, Graul's former Human Resource Consultant, and (ii) sequester Dennis Graul, Graul's corporate representative, from the deposition. Lynch claims that sequestration is appropriate because Graul coached Stirewalt throughout her deposition on August 31, 2006.[5]

Rule 26(c)(5) governs sequestration orders. For a sequestration order to issue, the rule requires a showing of "good cause." Fed. R. Civ. P. 26(c)(5). The moving party must make "a

---

[5] On August 31, 2006, Plaintiff's counsel deposed Ms. Stirewalt at his office for a little less than an hour, leading her chronologically through Lynch's application and interview. When the deposition turned to a conversation between Stirewalt and Dennis Graul, Plaintiff's counsel insisted that Graul leave the room. Counsel argued that it was his automatic right to sequester Graul. Defense counsel refused the demand, insisting that Graul, as corporate representative, had a right to remain. The discussion turned heated, and Plaintiff's counsel peremptorily declared the deposition terminated. Plainitiff's counsel now abandons the position that he may peremptorily exclude a corporate representative from a deposition. The case law and the Advisory Committee Notes to Fed. R. Civ. P. 30 make clear that "other witnesses are not automatically excluded from a deposition simply by the request of a party."

particular and specific demonstration of fact, as distinguished from stereotypes and conclusory statements." In re Terra International, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); see also Wright, Miller & Marcus, Federal Practice and Procedures § 2035 at 483-86 (2d Ed. 1994).

Lynch falls far short of making the required showing. Counsel never complained of coaching during Stirewalt's deposition. Lynch has not pointed to a single answer of Stirewalt's that he contends was so influenced. In contrast, both Graul and Stirewalt have submitted affidavits disavowing that coaching occurred. In her affidavit, Stirewalt states that because Graul was sitting behind her, "at no time could she see him." Lynch never supports his claim of coaching by Graul by affidavit or other competent proof. Nor has Lynch pointed to any reason why Stirewalt would be motivated to shade the truth.[6] Accordingly, for these reasons, the Court DENIES Lynch's motion to sequester.

This raises the question, however, whether the Court should allow Plaintiff's counsel to resume the deposition that he improperly concluded. Because the conversation between Stirewalt and Graul is central to the case, the Court will permit Lynch to complete the deposition. Because Plaintiff's counsel improperly terminated it, the Court will impose restrictions calculated to minimize Stirewalt's inconvenience. The deposition shall take place at a time, date and place of Stirewalt's choosing, will last no longer than one hour, and will be taken at Plaintiff's counsel's expense.

---

[6] The Court notes that Stirewalt has not worked for Graul's since November 2004, meaning that Stirewalt has no financial incentive to modify her testimony.

### C.  Graul's Motion to Compel:

Here, Graul's seeks supplementation of two interrogatories (No. 5 and No. 12) and one document request (No. 1).  Interrogatory No. 5 asks Lynch to identity any person who has provided him with oral or written statements relating to the case.  Lynch objected on the grounds that the question violates the attorney-client privilege, and is "overbroad and vague and speculative, and not reasonably calculated to lead to admissible evidence."

The objection is improper.  Rather than setting forth an "answer and/or brief statement of the grounds for objection, including a citation of the main applicable authorities," as Local Rule 104(6) requires, Lynch has resorted to an inaccurate, blunderbuss approach.  Statements made to Lynch by non-parties do not implicate the attorney-client privilege.  Nor is the interrogatory "vague."  On the contrary, it is plainly calculated to lead to the discovery of relevant evidence.

Accordingly, the Court strikes Lynch's objection, and instructs Lynch to answer the interrogatory subject to the following principle: Graul's will be entitled to a potential witness's identity depending on what information that witness presented Lynch.  If the witness offered Lynch nothing, then Lynch need not identify that person.  If, however, Lynch has located a witness who has provided relevant information, then Lynch must identify the person and provide the relevant facts.  For example, if Lynch has found someone who supports him - e.g., a minority applicant who Graul's turned away under circumstances suggesting discrimination - Graul's is entitled to discover it.  Graul's is not entitled to a roadmap of Lynch's investigation, but if the investigation revealed material information, then Graul's is entitled to learn the individual's identity and the pertinent information.  Accordingly, the Court GRANTS Graul's Motion with respect to Interrogatory No. 5 and ORDERS Lynch to answer within ten days.

Interrogatory No. 12 asks Lynch to "describe his employment history from his first job to the present." Lynch again objected on several grounds, and evidently then produced an incomplete resume. The Court strikes the objection. Lynch's full employment history is relevant to his damage claim under Title VII, where a plaintiff must mitigate his damages. 42 U.S.C. § 2000e-5(g); Ford Motor Co. v. EEOC, 458 U.S. 219, 232 (1982); Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985). Accordingly, the Court GRANTS Graul's Motion with respect to Interrogatory No. 12 and ORDERS Lynch to answer within ten days.

Document Request No. 1 asks Lynch to produce documents that reflect income he has received from 1997 to present, including his federal and state tax returns. Lynch objected to the request as "overbroad, irrelevant, and not reasonably calculated to lead to admissible evidence."[7] The Court strikes the objection. The party seeking discovery of tax returns bears the burden of establishing its relevance. See Terwilliger v. York Intern. Corp., 176 F.R.D. 214, 217 (W.D.Va. 1997) (citing cases). For the reasons discussed above, Lynch's tax returns are relevant to the issue of damages. Accordingly, the Court GRANTS Graul's Motion with respect to Document Request No. 1 and ORDERS Lynch to produce all responsive documents to Defense counsel's office within ten days.[8]

---

[7] Apparently, Lynch has sporadically operated a "cash business." In his response to Graul's Motion to Compel, Plaintiff's counsel states that Lynch is "not required to submit a tax return for any amounts he may have earned in income that would not be subject to IRS filing requirements." This is plainly non-responsive.

[8] To protect Lynch's privacy, only Defense counsel and Graul's corporate representative may view the returns.

**III.     Conclusion**

For the foregoing reasons and by separate Order the Court:

(i)     GRANTS in PART and DENIES in PART Lynch's Motion to Amend Complaint,

(ii)    DENIES Lynch's Motion for Protective Order, and

(iii)   GRANTS Graul's Motion to Compel.

Dated the 17th day of November, 2006.

/s/
Benson Everett Legg
Chief Judge
